**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **JAMES L. JARRETT,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **v.** | )     **Case No. 4:20CV384 HEA** |
| | ) |
| **EILEEN RAMEY,** | ) |
| | ) |
| **Respondent.** | ) |

**OPINION, MEMORANDUM AND ORDER**

Petitioner filed a *pro se* Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [Doc. No. 1]. Respondent filed a Response to the Court's Order to Show Cause Why Relief Should Not be Granted [Doc. No. 15]. Pursuant to Rule 8 of the Rules Governing Section 2254 Cases in the United States District Courts, this Court has determined that there are no issues asserted that give rise to an evidentiary hearing and therefore one is not warranted. For the reasons explained below, the Response to the Court's Order to Show Cause Why Relief Should Not be Granted is well taken, and the Petition will be denied.

**Factual Background**

Petitioner was found guilty of forcible rape and two counts of first-degree statutory sodomy. He was sentenced to total of fifty years imprisonment. Petitioner appealed his conviction and sentence to the Missouri Court of Appeals. Petitioner

also filed a post-conviction Rule 29.15 Motion.  The Motion Court denied the

motion, as did the Missouri Court of Appeals.

The Missouri Court of Appeals summarized the relevant facts in its Opinion

affirming the conviction and sentence:

> Jarrett was charged with the following offenses committed in 2010 against
> three of his adopted children: forcible rape of his 17-year-old daughter, H.J.
> (Count 1); first-degree statutory sodomy of his 13-year-old daughter, T.J.
> (Count 2); and first-degree statutory sodomy of his 12-year-old son, M.J.
> (Count 3). Following a jury trial in February 2014, Jarrett was found guilty
> on all three counts. The trial court imposed the jury-recommended sentences
> of 25 years on each count, with the sentences on Counts 1 and 2 running
> concurrently and the sentence on Count 3 running consecutively to the other
> sentences. This Court affirmed Jarrett's convictions and sentences on direct
> appeal in an unpublished order and statement.
>
> Statements Made by H.J.
>
> H.J. told a forensic interviewer that she was raped by Jarrett. H.J. said that
> the last time Jarrett sexually abused her was Thursday, May 6, 2010. On that
> date, Jarrett made her get on the floor on her hands and knees and then
> Jarrett put "his dick" in her "pussy" and then pulled it out and ejaculated into
> a paper towel. She said that Jarrett had done this "a lot," perhaps
> multiple times per week, in various different rooms in their house and at
> various locations when she was with Jarrett in his truck. H.J. also told a
> sheriff's deputy that the last time Jarrett raped her was on May 6, 2010.
>
> T.J.'s Testimony
>
> At trial, T.J. testified that Jarrett put his hands in T.J.'s pants and rubbed her
> "panties." After the first time this occurred on Halloween, Jarrett would
> touch her like this weekly. Although she could not remember precisely when
> Jarrett last touched her, she testified that it was about two weeks before H.J.
> disclosed to their mother (Mother) that Jarrett was abusing her. T.J. testified
> that the last incident occurred in Jarrett's bedroom after everyone else had
> left the house. She said that she was folding laundry when Jarrett made her
> go to his room, where Jarrett began touching her vagina with his penis and

his hand. T.J. also told a forensic examiner that the last time Jarrett touched her in this way was a couple of weeks before the forensic interview. A sheriff's deputy similarly testified that T.J. said the last time Jarrett sexually abused her was about two weeks before their interview, which occurred on May 9, 2010. T.J. told the deputy that Jarrett rubbed his penis on her vagina and also touched her vagina with his hand. She told the deputy that Jarrett had done this to her numerous times before then.

Petitioner now raises seven grounds for relief, alleging three trial court errors relating to the admission of evidence of statements made by H.J. and four ineffective assistance of counsel claims. Petitioner claims that the trial court erred when it admitted a videotape of statements H.J. made during a forensic interview with the Network Against Sexual Violence, and when it admitted testimony from Sheriff Deputy Al Fisher and Tammy Jarrett regarding statements made by H.J. For his ineffective assistance of trial counsel claims, Petitioner alleges that trial counsel was ineffective for failing to call Jarrett's eldest daughter, H.E., as a witness; failing to object to the verdict director; and failing to object to the testimony of T.J. about different sexual acts Petitioner forced her to engage in other than the charged acts. He also alleges appellate counsel was ineffective for failing to raise a plain-error challenge to the verdict director.

## Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA") applies to all petitions for habeas relief filed by state prisoners after the statute's effective date of April 24, 1996. When reviewing a claim that has

3

been decided on the merits by a state court, AEDPA limits the scope of judicial

review in a habeas proceeding as follows:

> An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim —
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

In construing AEDPA, the United States Supreme Court, in *Williams v. Taylor*, held that:

> Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme Court] on a question of law or if the state court decides a case differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the U.S. Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. 362, 412–13 (2000).

Furthermore, the *Williams* Court held that "a federal habeas court may not

issue the writ simply because that court concludes in its independent judgment that

4

the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 409.

A state court decision must be left undisturbed unless the decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, or the decision was based on an unreasonable determination of the facts in light of the evidence presented in state court. *Colvin v. Taylor*, 324 F.3d 583, 586-87 (8th Cir. 2003).

A decision is contrary to United States Supreme Court precedent if it decides a case based on a different rule of law than the rule dictated by United States Supreme Court precedent, or it decides a case differently than the United States Supreme Court did on materially indistinguishable facts. *Id*. A decision may only be overturned, as an unreasonable application of clearly established United States Supreme Court precedent, if the decision is both wrong and an objectively unreasonable interpretation or application of United States Supreme Court precedent. *Id*. A federal habeas court may not disturb an objectively reasonable state court decision on a question of federal law even if the decision is, in the federal court's view, wrong under Eighth Circuit precedent, and even if the habeas court would have decided the case differently on a clean slate. *Id*. State court factual determinations are presumed to be correct, and this presumption can only be rebutted by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

5

**Statute of Limitations**

Congress provides a one-year window in which a habeas applicant can file a petition for writ of habeas corpus.  That window opens at the conclusion of direct review.  The window closes a year later.  Failure to file within that one-year window requires the court to dismiss the petition for writ of habeas corpus. 28 U.S.C. §2244(d) (1) (A); *See Cross-Bey v. Gammon*, 322 F.3d 1012 (8th Cir.), *cert. denied*, 540 U.S. 971 (2003). If an inmate does not seek a writ of certiorari on direct review, direct review concludes when the time limit for seeking further review expires. *Gonzales v. Thaler*, 132 S. Ct. 641, 653-54 (2012). Under Missouri Supreme Court Rule 30.01, Rule 30.03, Rule 81.04, and Rule 81.08, the time limit for filing a notice of appeal is ten days after sentencing.

**Ineffective Assistance of Counsel**

To prevail on his ineffective assistance of counsel claims, Petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. See *Strickland v. Washington*, 466 U.S. 668, 688 (1984). With respect to the first *Strickland* prong, there is a strong presumption that counsel's conduct fell within the wide range of professionally reasonable assistance. *Id*. at 689. Thus, "counsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," and the "burden to show that

6

counsel's performance was deficient rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013) (quotation marks and citation omitted); *see also Strickland*, 466 U.S. at 689 (noting that a petitioner must show that the challenged action was not part of a sound trial strategy); *Abernathy v. Hobbs*, 748 F.3d 813, 816 (8th Cir. 2014) (explaining that reviewing courts must refrain "from engaging in hindsight or second-guessing of trial counsel's strategic decisions") (citation omitted)).

To establish "prejudice," the petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Merely showing a conceivable effect is not enough; a reasonable probability is one sufficient to undermine confidence in the outcome." *Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014) (citation omitted). Although *Strickland* requires a showing of both deficient performance and prejudice, a "finding that no prejudice exists is sufficient to conclude that counsel was not constitutionally ineffective – [courts] need not make a determination regarding deficiency*." Holder v. United States*, 721 F.3d 979, 987 (8th Cir. 2013).

"Taken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 202 (2011)).

First, under *Strickland*, the state court must take a predictive judgment about the effect of the alleged deficiencies of counsel on the outcome of the trial, focusing on whether it is "reasonably likely" that the result would have been different absent the errors. *Strickland*, 466 U.S. 696. ... To satisfy *Strickland*, the likelihood of a different result must be "substantial, not just conceivable." [*Harrington v. Richter*, 562 U.S. 86, 112 (2011)]. Under AEDPA, [federal courts] must then give substantial deference to the state court's predictive judgment. So long as the state court's decision was not "contrary to" clearly established law, the remaining question under the "unreasonable application" clause of § 2254(d) is whether the state court's determination under the Strickland standard is unreasonable, not merely whether it is incorrect. *Id*. at [99]. This standard was meant to be difficult to meet, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at [102.]

*Williams*, 695 F.3d at 831-32.

"When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 562 U.S. at 105. In this context, a state court's findings of fact made in the course of deciding a claim of ineffective assistance of counsel are presumed to be correct. *Odem v. Hopkins*, 382 F.3d 846, 849 (8th Cir. 2004).

## Procedural Default

To preserve a claim for federal habeas review, a state prisoner "must present that claim to the state court and allow that court an opportunity to address his claim." *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). "Where a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state

court are procedurally defaulted." *Id.* The federal habeas court will consider a procedurally defaulted claim only "where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Id.* (citing *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992)). To demonstrate cause, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, "[t]he habeas petitioner must show 'not merely that the errors at...trial created a possibility of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Id.* at 494, (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). Lastly, in order to assert the fundamental miscarriage of justice exception, a petitioner must "present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011), (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)).

## Discussion

Review under 28 U.S.C. § 2254 is a review to determine whether a person "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  Here, Petitioner states seven grounds for relief.

## **Grounds One, Two and Three – Trial Court Errors**

In Grounds One, Two and Three, Petitioner alleges three trial court errors relating to the admission of evidence of statements made by H.J. Petitioner claims that the trial court erred when it admitted a videotape of statements H.J. made during a forensic interview with the Network Against Sexual Violence (Ground One), and when it admitted testimony from Sheriff Deputy Fisher (Ground Two) and Tammy Jarrett (Ground Three) regarding statements made by H.J. Although Petitioner raised these claims on direct appeal, Petitioner did not object to the admission of this evidence at trial to preserve his claims for appellate review. During direct appeal, Petitioner admitted that he failed to preserve these claims for appellate review under Missouri's procedural rules.

Unpreserved claims cannot serve as a basis for reversing the judgment of conviction. A claim must be presented at each step of the judicial process in state court in order to avoid procedural default. *Jolly v. Gammon*, 28 F.3d 51, 53 (8th Cir. 1994). Although the Missouri Court of Appeals reviewed Petitioner's claims for plain error and found no error occurred, that discretionary review does not cure the procedural default. *Clark v. Bertsch*, 780 F.3d at 876-77. In order for this Court to consider this claim as not procedurally defaulted, Petitioner is required to demonstrate good cause and actual prejudice. *Murray*, 477 U.S. at 478.  The Petition contains nothing to demonstrate good cause for failing to raise this issue

10

nor does the Petition address any actual prejudice for the failure. Nor has he shown that a fundamental miscarriage of justice would occur if the Court does not review the merits of the claim. To the extent Petitioner suggests a claim of "actual innocence,"[1] he cannot meet this "strict standard; generally, a petitioner cannot show actual innocence where the evidence is sufficient to support a conviction." *Johnson v. United States*, 278 F.3d 839, 844 (8th Cir. 2002) (cleaned up).

> To be credible, actual innocence claims require:
>
> Petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful."

*Weeks v. Bowersox*, 119 F.3d 1342, 1351 (8th Cir. 1997) (quoting *Schlup v. Delo*, 513 U.S. 298, 322-24 (1995)).

Petitioner has not presented, or attempted to present, any new evidence "that affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Abdi*, 450 F.3d at 338. Especially considering the relevant facts affirming the conviction and sentence, he has not met this burden or shown that a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Id.*

---

[1] Petitioner states in each claim for Grounds One, Two and Three, without such evidence, "the State would have been unable to prove beyond a reasonable doubt that Jarret committed" the charged crimes.

Consequently, Petitioner's claims for relief in Grounds One, Two and Three are procedurally defaulted and must be denied.

**Grounds Four and Seven– Trial counsel was Ineffective for Failing to Call H.E. as a Witness and for Failing to Object to T.J's Testimony**

The Missouri Court of Appeals analyzed Grounds Four and Seven together, and this Court will do the same. Petitioner alleges in Ground Four that trial counsel was ineffective for failing to call Jarrett's eldest daughter, H.E., as a witness. In Ground Seven, Petitioner alleges that trial counsel was ineffective for failing to object to the testimony of T.J. about different sexual acts Petitioner forced her to engage in other than the charged acts. Petitioner raised these claims in his post-conviction motion proceedings, which the Missouri Court of Appeals rejected because trial counsel made a reasonable trial strategy decision to not object. Such denial is entitled to deference by this Court. *See Williams*, 695 F.3d at 831; 28 U.S.C. § 2254(d).

On federal habeas review, the Court does not determine whether Petitioner's counsel provided effective assistance, but instead "whether the state court's application of the *Strickland* standard was unreasonable." See *Harrington*, 562 U.S. at 101; see also *Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful,

to conclude that a particular act or omission of counsel was unreasonable."). "This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. Instead, the Court must determine "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*. at 105.

*Ground Four*

The Missouri Appeals Court summarized Petitioner's contention that counsel was ineffective in Ground Four because counsel failed "to call Jarrett's oldest daughter, H.E., to refute T.J.'s testimony at trial that the first time Jarrett sexually abused her was on Halloween night in 2005 when she was eight years old. At trial, Jarrett testified that he never kept T.J. from going trick-or-treating." Petitioner claims H.E. would have corroborated his testimony. At the evidentiary hearing, trial counsel testified he chose not to call H.E. to avoid the possible testimony that could damage the defense. Trial counsel testified as follows:

> When I was speaking with [Jarrett], I was concerned that the State would call his son, [E.J.], as a rebuttal witness. [Jarrett] indicated he and [E.J.] didn't have a very good relationship, and I was concerned about that. In addition, I was also concerned about his wife at the time ... also rebutting that presumption or that statement. I didn't want to muddle up the record with who are we going to believe more, the mother or the daughter. As I explained to [Jarrett], the whole case was going to depend on whether they believed him or they didn't believe him. So that was my strategy.

The Missouri Court of Appeals denied this ineffective assistance of counsel claim, explaining:

13

"Reasonable choices of trial strategy, no matter how ill-fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance." *Anderson [v. State*, 196 S.W.3d 28,] 33 [(Mo. banc 2006)]. Further, "[t]he selection of witnesses and evidence are matters of trial strategy, virtually *unchallengable* in an ineffective assistance claim." *Williams [v. State*, 168 S.W.3d] 433 [(Mo. banc 2005)] (emphasis added); *see also Strickland*, 466 U.S. at 690 ("strategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable"). Here, the record shows that Todd had investigated H.E. as a witness and, after further consideration, reasonably decided not to call her at trial because he was afraid that the State might call Jarrett's son and former wife as rebuttal witnesses, whom he believed would harm the defense. Moreover, the first-degree statutory sodomy charge against T.J. was alleged to have occurred five years later in 2010. H.E.'s alleged testimony concerning whether T.J. went trick- or-treating years earlier would have only served to impeach T.J.'s statement about the exact date Jarrett's sexual abuse against her first began – a collateral matter. Counsel could have reasonably decided that the opportunity to present impeachment evidence on this collateral issue was outweighed by other strategic considerations. *See State v. Twenter*, 818 S.W.2d 628, 643 (Mo. banc 1991) ("[o]rdinarily, a defendant is not entitled to relief merely because defense counsel elects not to present evidence of dubious impeachment value"); *see also Tucker v. State*, 468 S.W.3d 468, 474 (Mo. App. 2015) ("decision whether to impeach a witness is presumed to be a matter of trial strategy").

*Ground Seven*

The Missouri Appeals Court summarized Petitioner's contention that

counsel was ineffective in Ground Seven because counsel failed to object when:

The prosecutor asked T.J. whether Jarret "ever tried to put his penis in her vagina and other places besides her vagina" and for asking T.J. on recross-examination whether Jarrett "ever touched her breasts" or "ever tried to make her put his penis in [her] mouth." Jarrett further alleged that by "failing to object and for asking these questions, trial counsel allowed uncharged crimes and prior bad acts evidence to be presented against him."

14

At the evidentiary hearing, trial counsel testified there were three reasons for

not objecting to this testimony:

> 1) to avoid signaling to the jury that the defense was concerned about T.J.'s testimony; (2) to move the case along by getting T.J., who was visibly distraught, off the witness stand as soon as possible; and (3) because Todd did not think the judge would sustain the objection. The motion court credited Todd's testimony as reasonable trial strategy and denied the claim. The court specifically found that it was "Todd's trial strategy to not object to the line of questioning to prevent highlighting the additional alleged incidents, to conclude an unfavorable witness, and to focus on Mr. Jarrett's own testimony."

The Missouri Court of Appeals denied this ineffective assistance of counsel

claim, explaining:

> Here, Jarrett has again failed to demonstrate that trial counsel's failure to object was unreasonable trial strategy. It is well recognized that even seasoned trial attorneys will oftentimes not object to otherwise improper questions or arguments because it is feared that frequent objections "highlight the statements complained of, resulting in more harm than good." *Barton v. State*, 432 S.W.3d 741, 754 (Mo. banc 2014) (citation omitted); *see Marshall v. State*, 567 S.W.3d 283, 293 (Mo. App. 2019) (merely because trial counsel failed to object to everything objectionable does not equate to incompetence or ineffective assistance of counsel). In addition, Jarrett failed to prove that he was prejudiced, because any objection to the prosecutor's questions on the ground that they sought to elicit evidence of other crimes would not have been meritorious. "Numerous cases in Missouri involving sexual crimes against a child have held that prior sexual conduct by a defendant toward the victim is admissible as it tends to establish a motive, that is satisfaction of defendant's sexual desire for the victim." *State v. Primm*, 347 S.W.3d 66, 70 (Mo. banc 2011) (internal quotation marks omitted); *see also State v. Evans*, 490 S.W.3d 377, 383 n.2 (Mo. App. 2016). Thus, because Jarrett's uncharged sexual conduct toward T.J. was admissible, any objection would not have been meritorious. Trial counsel is not ineffective for failing to make a non-meritorious objection. *Zink*, *[v. State*, 278 S.W.3d 170,] 188 [(Mo. banc 2009)].; *Marshall*, 567 S.W.3d at 292; *see also Anderson v. State*, 564 S.W.3d 592, 615 (Mo. banc 2018).

15

The Missouri Court of Appeals correctly identified *Strickland* and its progeny as the standard to apply regarding these claims and its application was not unreasonable for the reasons stated by it. Grounds Four and Seven will be denied.

**<u>Grounds Five and Six</u> – Verdict Director**

Grounds Five and Six relate to the verdict director and will be analyzed together. Petitioner claims that trial counsel was ineffective for failing to object to the verdict director (Ground Five) and appellate counsel was ineffective for failing to raise a plain-error challenge to the verdict director (Ground Six). Petitioner raised these claims in his post-conviction motion proceedings, which the Missouri Court of Appeals rejected because there was no valid basis to challenge the verdict directing instructions.

The Missouri Court of Appeals summarized the relevant evidence as follows:

> In each point, Jarrett asserts that "the verdict directors failed to differentiate between the various sexual encounters in a way that ensured the jury unanimously convicted [Jarrett] of the same act or acts" as required in ***State v. Ceils-Garcia***, 344 S.W.3d 150 (Mo. banc 2011). Our Supreme Court in ***Celis-Garcia*** suggested two ways to address the unanimity problem in cases regarding multiple acts:
>
> > [A] defendant's right to a unanimous verdict would be protected in a multiple acts case by either the state (1) electing the particular criminal act on which it will rely to support the charge or (2) the verdict director specifically describing the separate criminal acts presented to the jury and the jury being instructed that it must agree unanimously that at least one of those acts occurred.

16

*Id.* at 157. Distinguishing between the offenses is of crucial importance. *Hoeber v. State*, 488 S.W.3d 648, 658 (Mo. banc 2016). "[T]he separate offenses could be distinguished on the basis of time or other characteristics besides the place in which the offense occurred." *Id*.; *see also Sanders v. State*, 564 S.W.3d 380, 383-84 (Mo. App. 2018) (noting that the determination of *Strickland* prejudice with respect to ineffective-assistance-of-counsel claims concerning jury unanimity is case-specific and dependent on the factual circumstances of each case). With that background review completed, the following additional facts are relevant to these two points on appeal.

[Count I:]

H.J. told a forensic interviewer that she was raped by Jarrett. H.J. said that the last time Jarrett sexually abused her was Thursday, May 6, 2010. On that date, Jarrett made her get on the floor on her hands and knees and then Jarrett put "his dick" in her "pussy" and then pulled it out and ejaculated into a paper towel. She said that Jarrett had done this "a lot," perhaps multiple times per week, in various different rooms in their house and at various locations when she was with Jarrett in his truck. H.J. also told a sheriff's deputy that the last time Jarrett raped her was on May 6, 2010.

The verdict-directing instruction for Count 1 (forcible rape) required the jury to find that Jarrett had sexual intercourse by the use of forcible compulsion with H.J. "on or about May 6, 2010[.]" During closing argument, the prosecutor focused the jury's attention on the verdict- directing instruction for Count 1 and the incident of forcible rape to which H.J. was subjected by Jarrett on May 6, 2010.

[Count II:]

At trial, T.J. testified that Jarrett put his hands in T.J.'s pants and rubbed her "panties." After the first time this occurred on Halloween, Jarrett would touch her like this weekly. Although she could not remember precisely when Jarrett last touched her, she testified that it was about two weeks before H.J. disclosed to their mother (Mother) that Jarrett was abusing her. T.J. testified that the last incident occurred in Jarrett's bedroom after everyone else had left the house. She said that she was folding laundry when Jarrett made her go to his room, where Jarrett began touching her vagina with his penis and

17

his hand. T.J. also told a forensic examiner that the last time Jarrett touched her in this way was a couple of weeks before the forensic interview. A sheriff's deputy similarly testified that T.J. said the last time Jarrett sexually abused her was about two weeks before their interview, which occurred on May 9, 2010. T.J. told the deputy that Jarrett rubbed his penis on her vagina and also touched her vagina with his hand. She told the deputy that Jarrett had done this to her numerous times before then.

The verdict-directing instruction for Count 2 (first-degree statutory sodomy) required the jury to find that Jarrett touched T.J.'s genitals with his hand "on or between April 15 and May 1, 2010[.]" Mother testified that, on the way to spend Mother's Day with her mother in 2010, H.J. and T.J. disclosed that Jarrett had been sexually abusing them. The prosecutor argued to the jury that T.J. had testified about Jarrett rubbing her genitals approximately two weeks before she gave a statement to police on May 9, 2010.

[Count III:]

M.J. testified that in November 2010, while at Jarrett's house, Jarrett stuck his penis in M.J.'s "butt." M.J. said that Jarrett sexually abused him in the same manner a few other times after this incident. M.J. also told the forensic examiner that Jarrett "raped" him in this way more than once at Jarrett's house. M.J. said the last time Jarrett did this to him was on the day he told Mother about the abuse. Mother testified that, in early December 2010, M.J. disclosed to her that Jarrett was sexually abusing him.

The verdict-directing instruction for Count 3 (first-degree statutory sodomy) required the jury to find that Jarrett placed his penis in M.J.'s anus "on or between November 7 and December 1, 2010."

At trial, Jarrett's counsel objected to the verdict-directing instruction for Count 2 only on the ground that the time frame alleged was different than that alleged in the charging document. No objection was made to the verdict-directing instructions on jury-unanimity grounds.

At the evidentiary hearing, trial counsel testified he did not have a trial

strategy for not objecting to the verdict directors for lack of specificity because he

18

did not believe Petitioner was guilty of any offense, and the defense theory at trial

was that he had not committed the charged offenses.

Appellate counsel testified at the evidentiary hearing as follows:

Appellate counsel Johnston testified that the verdict-directing instruction pertaining to H.J. alleged a specific date – May 6, 2010 – on which the forcible rape had occurred. According to Johnston, this required the jury to unanimously agree that a specific incident of forcible rape committed against H.J. occurred on that particular date. She said this specificity led her to not to raise a jury-unanimity claim on appeal with respect to Count 1 involving H.J.

Johnston testified that the same was true for the allegations involving T.J. Even though there was evidence that Jarrett engaged in multiple acts of sexual abuse with T.J., there was enough specificity for jury unanimity when T.J. testified the last time Jarrett abused her was when she was folding laundry. Counsel did not "see a jury unanimity problem" with the verdict-directing instruction involving T.J.

With respect to M.J., Johnston testified that she did not raise a jury-unanimity claim because the evidence showed that Jarrett committed the same act multiple times against M.J. without any additional specificity to distinguish one act from another. Moreover, she noted that the prosecutor told jurors that the instruction was focused on the last time this occurred to M.J. Johnston believed that this was specific enough not to implicate a jury-unanimity issue.

The Missouri Court of Appeals denied this ineffective assistance of counsel

claim, explaining:

Jarrett's claims are without merit because he failed to prove appellate counsel's actions were anything other than reasonable strategy. "Appellate counsel is not ineffective for failing to raise every non-frivolous claim on appeal but may use his professional judgment to focus on the most important issues." **Barnes v. State**, 334 S.W.3d 717, 723 (Mo. App. 2011); *see* **Baumruk [v. State,** 364 S.W.3d 518,] 539 [(Mo. banc 2012)] ("no duty to present non-frivolous issues where appellate counsel strategically decides to

winnow out arguments in favor of other arguments"). Further, counsel will not be found ineffective for deciding not to raise a non-meritorious claim. *Royer v. State*, 421 S.W.3d 486, 490 (Mo. App. 2013). "In fact, a post-conviction movant fails to prove counsel's performance is deficient when appellate counsel testifies he or she did not raise a particular issue because he or she believed it would be without merit." *Id.*; *see, e.g., Storey v. State*, 175 S.W.3d 116, 149 (Mo. banc 2005) (reasonable decision of appellate strategy to not raise the issue on appeal "is not a ground for ineffective assistance of counsel"). Here, Johnson explained in detail why she did not think a point on appeal regarding jury unanimity would have been meritorious, and the motion court agreed, finding her strategy reasonable. Consequently, Jarrett failed to overcome the heavy burden of proving counsel's performance was deficient. *See Storey*, 175 S.W.3d at 149; *Royer*, 421 S.W.3d at 490. Further, "appellate counsel cannot be deemed ineffective for failing to raise a nonmeritorious claim." *Joyner v. State*, 421 S.W.3d 580, 582 (Mo. App. 2014).

Appellate counsel's testimony on this issue also supports the trial court's ruling that trial counsel was not required to assert a unanimity objection to the verdict-directing instructions. Just like appellate counsel, trial counsel here is not ineffective for failing to make a non-meritorious objection. *Zink,* 278 S.W.3d at 188.

The Missouri Court of Appeals found that Petitioner had no meritorious claim challenging the verdict directors, and the record supports the post-conviction motion denial. Such denial is entitled to deference by this Court. *See* Williams, 695 F.3d at 831; 28 U.S.C. § 2254(d). Petitioner fails to show that the reasoning of the Missouri Court of Appeals was unreasonable or contrary to established federal law. The Court articulated its rationale based upon applicable law. Therefore, these claims for relief must be denied.

20

## Conclusion

For the foregoing reasons, the Court concludes that the grounds in
Petitioner's Petition for Writ of Habeas Corpus are either procedurally barred or
fail on the merits and must be denied in all respects.

## Certificate of Appealability

When a district court issues an order under § 2254 adverse to the applicant it
"must issue or deny a certificate of appealability." R. Governing Section 2254
Cases in the U.S. Dist. Cts., R. 11. If a federal court denies a habeas application on
procedural grounds without reaching the underlying constitutional claims, the
Court should issue a certificate of appealability if the prisoner has shown "that
jurists of reason would find it debatable whether the petition states a valid claim of
the denial of a constitutional right and that jurists of reason would find it debatable
whether the district court was correct in its procedural ruling." *Slack v. McDaniel*,
529 U.S. 473, 484 (2000). "Where a plain procedural bar is present and the district
court is correct to invoke it to dispose of the case, a reasonable jurist could not
conclude either that the district court erred in dismissing the petition or that the
petitioner should be allowed to proceed further." *Id.*; see also *Khaimov v. Crist*,
297 F.3d 783, 786 (8th Cir. 2002) (interpreting *Slack* in the following manner:
"1) if the claim is clearly procedurally defaulted, the certificate should not be
issued; 2) even if the procedural default is not clear, if there is no merit to the

substantive constitutional claims, the certificate should not be issued; but, 3) if the procedural default is not clear and the substantive constitutional claims are debatable among jurists of reason, the certificate should be granted").

For the reasons stated in this Opinion, the Court finds that Petitioner's claims in Grounds One, Two and Three are procedurally defaulted. The Court also finds that the denial of Petitioner's other claims, Ground Four through Seven, are based on such a clear record and well-settled law that no reasonable jurists would debate that a constitutional right of Petitioner was denied. Therefore, no certificate of appealability will issue in this case.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [Doc. No. 1] is **DENIED**.

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue.

A separate judgment in accordance with this Opinion, Memorandum and Order is entered this same date.

Dated this 24th day of March, 2023.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE

22